*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* J. C. HILL, Minor.

UNPUBLISHED
December 21, 2023

No. 364858
Wayne Circuit Court
Family Division
LC No. 2015-521544-NA

Before: RIORDAN, P.J., and CAVANAGH and GARRETT, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating his parental rights to his minor child, JCH, under MCL 712A.19b(3)(i), (j), and (m)(*i*), and finding that termination was in JCH's best interests. Among other factors, respondent's prior conviction for sexually assaulting a minor, his prior terminations, and his lack of bond with JCH supported the trial court's statutory-ground and best-interest determinations. We affirm.

## I. BACKGROUND

JCH was born in September 2020. The following month, the Department of Health and Human Services (DHHS) petitioned to remove JCH from his mother's custody. At the time, JCH's father was unknown. The trial court authorized the petition, removed JCH, and placed the child with his maternal aunt. Respondent was soon named as the putative father of JCH. Not until April 2022, after DNA testing established respondent's paternity and he signed an affidavit of parentage, was respondent established as JCH's legal father. DHHS then filed a supplemental petition seeking to terminate respondent's parental rights, which the trial court authorized.

In September 2022, a trial was held to determine whether the court could exercise jurisdiction over the proceedings and whether statutory grounds existed to terminate respondent's parental rights to JCH. The trial court first took judicial notice of the previous cases in which respondent's parental rights had been terminated to five children. The sole witness was Porschia Lee, JCH's foster care supervisor. With respect to housing, Lee testified that respondent initially informed her that he was living in a hotel and later reported that he moved to his brother's house. Respondent did not give Lee the address, however, so Lee was never able to conduct a home visit to determine the suitability of housing for JCH. Lee also testified that respondent had a criminal conviction for second-degree criminal sexual conduct (CSC). In 2006, respondent sexually

assaulted the half sibling of one of his daughters; the victim was 14 years old at the time. Lee noted that respondent was not currently incarcerated, but he had to register as a sex offender for life. Lee also confirmed that respondent's parental rights to five other children were terminated in two separate cases. In the more recent case involving three children, respondent had been given a treatment plan and had been offered many services to facilitate reunification. Respondent failed to benefit from parenting classes, and he continuously displayed concerning and neglectful behavior at supervised visits with the children. Because respondent did not benefit from his treatment plan, his parental rights were terminated to those children in 2019. Back in this case, the trial court concluded that jurisdictional and statutory grounds existed to terminate respondent's parental rights. The court held that termination was proper under MCL 712A.19b(3)(i), (j), and (m)(*i*), expressly finding support from respondent's prior terminations, unsuccessful completion of treatment, and CSC conviction.

Best-interest proceedings were held over two days in November and December 2022. Netfa Washington, a foster care worker, testified that respondent had not attended a single weekly visit with JCH since she became involved in the case in August 2022. Washington had offered respondent bus tickets or rides to parenting time, but he told Washington that he did not need help getting to appointments. Washington also visited the home where respondent was staying, but she noted that the arrangement was not suitable for JCH because there was no space for a bed in respondent's room. When Washington asked respondent about his plan for housing, respondent simply referenced the fact that he was homeless.

An earlier foster care worker in the case, Starlecia Jacobs, testified that respondent attended five visits with JCH over a three-month period. During the visits, respondent did not comfort JCH or respond to the child's needs, and Jacobs did not observe any bond between father and child. Jacobs testified that respondent didn't even know JCH's name for at least the first two visits; Jacobs had to correct respondent when this occurred. Jacobs also stated that JCH's maternal aunt was willing to adopt the child if needed and that JCH's mother was making progress on her treatment plan. The trial court found that it was in JCH's best interests to terminate respondent's parental rights. The court recognized that JCH was placed with a relative but explained that respondent had no bond with JCH and had shown no interest in the child. In a subsequent order, the trial court also noted respondent's prior terminations, CSC conviction, failure to attend visitation, and failure to appear for court hearings as factors supporting its best-interest findings.[1] This appeal followed.

---

[1] Respondent did not attend the trial or either of the best-interest hearings. Lee testified that she spoke with respondent on the morning of the first day of the best-interest hearing and provided him with the information to attend by Zoom. Respondent told Lee that the trial court "has already made its decision and that he knows what the outcome is going to be . . . ." Washington also spoke to respondent that morning to encourage him to attend and "speak for himself"; respondent said that he did not plan to attend because "he did not want to hear that his rights were going to be terminated . . . ."

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that statutory grounds did not exist to terminate his parental rights to JCH.[2]

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Clear and convincing evidence is clear, direct, and weighty evidence that allows the finder of fact to reach a conclusion without hesitancy. *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995). We review the trial court's determination of statutory grounds for clear error. *In re Sanborn*, 337 Mich App 252, 272; 976 NW2d 44 (2021). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Id*. at 272-273 (cleaned up).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(i), (j), and (m)(*i*). Because respondent only challenges the finding of statutory grounds under MCL 712A.19b(3)(j), we begin with that provision. MCL 712A.19b(3)(j) authorizes termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." In reviewing this statutory ground, we consider both physical and emotional harm to the child. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011).

---

[2] Respondent's appellate brief, filed by appointed counsel, erroneously states that the trial court found statutory grounds for termination under MCL 712A.19b(3)(a)(*ii*), (g), and (j). Making matters worse, the brief contains several baffling legal errors. For instance, the brief erroneously cites *In re Hall-Smith*, 222 Mich App 470; 564 NW2d 156 (1997), for the proposition that "termination of parental rights is mandatory if there are grounds for doing so, unless the parent(s) comes forward with clear evidence that demonstrates that termination is not in the best interest of the child." Our Supreme Court overruled *In re Hall-Smith* more than 20 years ago on this point. *In re Trejo*, 462 Mich 341, 352; 612 NW2d 407 (2000) ("We reject *Hall-Smith*'s characterization of [MCL 712A.19b(5)] as creating a rebuttable presumption, because the plain language of [MCL 712A.19b(5)] does not expressly assign any party the burden of producing best interest evidence."). Plus, both *Hall-Smith* and *Trejo* interpreted a version of MCL 712A.19b(5) that has long since been amended. See 2008 PA 199. Counsel also cites *People v Hicks*, 149 Mich App 737; 386 NW2d 657 (1986), for the principle that courts may not deprive parents of child custody without "extremely good cause." This purported standard was pulled out of thin air. *Hicks* contains no such language; it was a criminal case in which the defendants unsuccessfully challenged their convictions for cruelty to children on constitutional grounds. *Hicks*, 149 Mich App at 740-746. *Hicks* merely recognized that "[p]arents have a right to autonomy in the control and upbringing of their children," but such right is not absolute. *Id*. at 743. While counsel's briefing errors have not affected our resolution of this appeal, that does not excuse them. Need we say more, we remind counsel of the ethical obligation to provide competent representation and to not "handle a legal matter without preparation adequate in the circumstances." MRPC 1.1(b).

Clear and convincing evidence supported the trial court's finding of a reasonable likelihood that JCH would be harmed if returned to respondent's care. Respondent had a prior CSC conviction stemming from sexual abuse of a minor and prior terminations of parental rights involving neglect. Respondent did not have suitable housing to care for JCH, and he did not demonstrate a desire to establish an emotional connection with his child. While respondent attended some supervised visits with JCH, his visitation was sporadic, and he was often disengaged with JCH. Considering this evidence as a whole, we are not definitely and firmly convinced that the trial court erred by finding that termination was proper under MCL 712A.19b(3)(j). At a minimum, evidence of respondent's disinterest in visiting and bonding with JCH, combined with respondent's history of parental neglect and sexual misconduct, presented a reasonable likelihood that JCH would suffer physical or emotional harm in respondent's care.

Once at least one statutory ground for termination is established, we "need not consider whether the other grounds cited by the trial court also supported the termination decision." *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009). Thus, not only did respondent fail to argue that termination was improper under MCL 712A.19b(3)(i) and (m)(*i*), but it is also unnecessary to consider these grounds.[3] The trial court did not clearly err by finding statutory grounds to terminate respondent's parental rights to JCH.[4]

### III. BEST INTERESTS

Respondent next contends that termination of his parental rights was not in JCH's best interests.

"Even if the trial court finds that [DHHS] has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015), citing MCL 712A.19b(5). We review the trial court's best-interest findings for clear error. *Sanborn*, 337 Mich App at 276.

---

[3] MCL 712A.19b(3)(i) provides for termination when "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and the parent has failed to rectify the conditions that led to the prior termination of parental rights." Relatedly, MCL 712A.19b(3)(m)(*i*) authorizes termination when the parent has been convicted of CSC and "the court determines that termination is in the child's best interests because continuing the parent-child relationship with the parent would be harmful to the child."

[4] Respondent also asserts that he was never given a treatment plan or an opportunity to participate in services. To the extent respondent is arguing that DHHS failed to make reasonable efforts to reunify him with JCH, any such argument lacks merit. In general, DHHS "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). But reasonable efforts are not required in several enumerated circumstances, including when "[t]he parent is required by court order to register under the sex offenders registration act." MCL 712A.19a(2)(d). Testimony established that respondent's CSC conviction required him to register as a sex offender for life. DHHS therefore was not required to make reasonable efforts to reunify respondent with JCH.

The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713-714; 846 NW2d 61 (2014). Factors to consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). Other relevant considerations are "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. Lastly, when a child is living with relatives, the trial court must consider that factor in determining whether termination is in the child's best interests. *Olive/Metts*, 297 Mich App at 43. "A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Id*.

The trial court did not clearly err by finding by a preponderance of the evidence that termination was in JCH's best interest. Despite being offered transportation assistance, respondent did not attend any visits with JCH in the three or four months before the first best-interest hearing. During the few visits that respondent attended when Jacobs was the foster care worker, respondent was disengaged with JCH and refused to comfort the child. Respondent also did not remember JCH's name for the first few visits and had to be reminded. The evidence showed that JCH lacked any bond with respondent, and respondent was not committed to establishing that bond. The lack of bond and respondent's poor visitation history supported the trial court's best-interest findings.

Evidence also established that respondent did not have adequate housing to care for JCH. Respondent moved into his brother's house, but the caseworker testified that respondent's room was unsuitable for JCH because there was no room for a separate bed. The trial court also found, and we agree, that termination was proper even though JCH was placed with a relative. See *Olive/Metts*, 297 Mich App at 43. JCH's need for permanency and stability, combined with respondent's apparent disinterest in developing a relationship with JCH, supported the trial court's finding that termination was in JCH's best interests despite his placement with his maternal aunt. The trial court did not clearly err by reaching this conclusion.

We affirm.

/s/ Michael J. Riordan
/s/ Mark J. Cavanagh
/s/ Kristina Robinson Garrett